THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**CECILIA BAKER, Individually and on Behalf
of All Others Similarly Situated**                                                                     **PLAINTIFF**

v.                                   **Case No. 4:20-cv-00508-KGB**

**APC PASSE, LLC and ARKANSAS PROVIDER
COALITION, LLC**                                                                                      **DEFENDANTS**

## ORDER

Plaintiff Cecilia Baker brings this proposed collective action against defendants APC PASSE, LLC ("PASSE") and Arkansas Provider Coalition, LLC ("APC").[1] Ms. Baker alleges that APC and PASSE have a uniform policy and practice of refusing to pay Ms. Baker and all other similarly situated hourly employees for all hours worked and an overtime premium for all hours worked in excess of 40 hours each week, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, and the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. § 11-4-201, *et seq*.

Before the Court is Ms. Baker's motion for conditional certification, for disclosure of contact information, and to send notices (Dkt. No. 11). APC and PASSE responded in partial opposition to the motion (Dkt. No. 25), and Ms. Baker replied (Dkt. No. 27). For the reasons that follow, the Court grants in part and denies in part Ms. Baker's motion for conditional certification, for disclosure of contact information, and to send notices (Dkt. No. 11).

---

[1] Ms. Baker also named as a defendant Anthem Partnership Holding Company LLC ("Anthem"). By prior Order, this Court granted plaintiff's unopposed motion to dismiss without prejudice Anthem Partnership Holding Company LLC (Dkt. No. 38).

I.      **Factual Background**

Ms. Baker represents that she has been since May 2019 and currently is an hourly-paid care coordinator supervisor at APC and PASSE (Dkt. No. 11-6, ¶ 4). According to Ms. Baker's sworn affidavit, APC and PASSE "are a family of companies funded by Arkansas Medicaid that provide healthcare management for individuals with developmental disabilities and behavioral health needs" (*Id.*, ¶ 5). In her complaint, Ms. Baker states that her job duties as a care coordinator supervisor include "managing Defendant's Medicaid clients' cases, supervising other employees and making their schedules." (Dkt. No. 1, ¶ 27).

Ms. Baker alleges claims under the FLSA and AMWA. Specifically, Ms. Baker contends that APC and PASSE required all of its hourly employees, including other care coordinator supervisors and care coordinators, to work over 40 hours in a week but to not record any hours worked over 40 hours in a week (*Id.*, ¶ 9). She alleges that she worked 50 hours a week but that APC and PASSE required her to clock out after reaching 40 hours in a week and refused to compensate her for any overtime hours worked (*Id.*). She also claims that, as a care coordinator supervisor, she was responsible for enforcing this policy among the care coordinators (*Id.*). In her motion, Ms. Baker seeks conditional certification of the following class of individuals: "[A]ll supervisors and care coordinators employed by Defendants within the three years prior to the filing of Plaintiff's Original Complaint . . . ." (Dkt. No. 11, ¶ 3).

II.     **Analysis**

A.      **Conditional Certification**

Under the FLSA:

An action to recover the liability prescribed . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless

> he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

Many district courts in the Eighth Circuit utilize a two-step approach in collective action cases. At the notice stage, the Court must determine, based on the pleadings and affidavits, whether notice should be given to potential class members. The key issue is whether the members of the proposed class are similarly situated. If the Court allows notification, then a representative class is conditionally certified, and Ms. Baker will send notice to the putative opt-in plaintiffs. At the second stage, the Court determines whether to decertify the class once discovery is largely complete. *Smith v. Frac Tech Services, Ltd.*, No. 4:09-cv-679, 2009 WL 4251017, at *2 (E.D. Ark. Nov. 24, 2009) (citation omitted). This Court has previously adopted this approach. *See Fox v. TTEC Servs. Corp.*, No. 4:19-cv-00037, 2021 WL 1096332 (E.D. Ark. Mar. 22, 2021); *McChesney v. Holtger Bros., Inc.*, No. 4:17-cv-824, 2019 WL 118408, at *2 (E.D. Ark. Jan. 7, 2019); *Cruthis v. Vision's*, No. 4:12-cv-244, 2013 WL 4028523, at *1-2 (E.D. Ark. Aug. 7, 2013); *Watson v. Surf-Frac Wellhead Equip. Co.*, No. 4:11-cv-843, 2012 WL 5185869, at *1 (E.D. Ark. Oct. 18, 2012).

"'To establish that conditional certification is appropriate, the plaintiff[] must provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist.'" *Tegtmeier v. PJ Iowa, L.C.*, 208 F. Supp. 3d 1012, 1018 (S.D. Iowa 2016) (alteration in original) (quoting *Robinson v. Tyson Foods, Inc.*, 254 F.R.D. 97, 99 (S.D. Iowa 2008)). Ms. Baker's burden at the notice stage is lenient and may be met by making a "modest factual showing," typically by the submission of affidavits, that she and the putative class were victims of a common decision, policy, or plan of the employer that affected all class members in a similar fashion. *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 941 (W.D. Ark. 2007) (citing *Kautsch v.*

3

*Premier Commc'ns*, 504 F. Supp. 2d 685, 689 (W.D. Mo. 2007)).  However, while this is a "lenient standard, . . . 'more than mere allegations' are required."  *Tegtmeier*, 208 F. Supp. 3d at 1019 (quoting *Robinson*, 254 F.R.D. at 99).

"Typically, district courts will make the determination of whether to conditionally certify a class based solely on the affidavits presented by the plaintiffs."  *Huang v. Gateway Hotel Holdings*, 248 F.R.D. 225, 227 (E.D. Mo. 2008) (citation omitted).  However, district courts may consider a plaintiff's pleadings as well.  *See Resendiz-Ramirez*, 515 F. Supp. 2d at 941 ("The question before the Court in the present case is whether, under the lenient standard of the notice stage, the named Plaintiffs, through their pleadings and affidavits, have demonstrated that they are 'similarly situated' to the potential collective action members.").  The Court can consider a variety of non-exclusive factors in determining whether employees are similarly situated.  Such factors include:  (1) whether the employees held the same job title; (2) whether they worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether the employees were subjected to the same policies and practices and, if so, whether the policies and practices were established in the same manner and by the same decision maker; and (5) the extent to which the acts constituting the alleged violations are similar.  *See McChesney*, 2019 WL 118408, at *2 (citing *Stone v. First Union Corp.*, 203 F.R.D. 532, 542-43 (S.D. Fla. 2001)).

"The Court does not need to determine whether class members are *actually* similarly situated until the 'merits stage' of the litigation, when defendants typically move to decertify the class."  *Tinsley v. Covenant Care Servs., LLC*, No. 1:14CV00026 ACL, 2015 WL 1433988, at *1 (E.D. Mo. Mar. 27, 2015) (emphasis in original) (citing *Littlefield v. Dealer Warranty Servs., LLC*, 679 F. Supp. 2d 1014, 1016-17 (E.D. Mo. 2010)).  "Further, at this stage, the Court does not make

credibility determinations or resolve contradictory evidence presented by the parties." *In re Pilgrim's Pride Fair Labor Standards Act Litigation*, MDL Docket No. 1:07-cv-1832, 2008 WL 4877239, at *3 (W.D. Ark. Mar. 13, 2008).

To meet her burden, Ms. Baker presents her sworn affidavit, in which she avers that, as a care coordinator supervisor, she "was paid an hourly rate for hours that [she] worked up to forty (40) per week for Defendants.  However, Defendants required [her] to clock out once [she] had reached forty (40) hours in a week and refused to compensate [her] for any overtime hours worked." (Dkt. No. 11-6, ¶ 9).  Ms. Baker also avers that she "regularly worked around fifty hours per week." (*Id.*, ¶ 8).  According to Ms. Baker:

> I know that other supervisors and care coordinators were subject to this same policy because as a supervisor, I was responsible for enforcing this policy among the care coordinators, because the other supervisors and care coordinators and I discussed our pay, and because Defendants indicated to me that this policy applied to all of their supervisors and care coordinators.

(*Id.*, ¶ 9).

Ms. Baker estimates that, since May 13, 2017, at least 300 individuals work or have worked as hourly-paid care coordinator supervisors and care coordinators for APC and PASSE (*Id.*, ¶ 10). She also asserts that other care coordinator supervisors and care coordinators were paid in the same manner by APC and PASSE and that these employees would be interested in joining this action (*Id.*, ¶ 11).

In addition to her own affidavit, Ms. Baker provides a sworn affidavit by Linda Hodge (Dkt. No. 11-7).  In the affidavit, Ms. Hodge alleges that she was employed by APC and PASSE as a care coordinator from June 2019 to February 2020 (*Id.*, ¶ 4).  Ms. Hodge does not explain her duties as a care coordinator in her affidavit, and this Court can find no other information regarding the job duties of care coordinators employed by APC and PASSE in any of Ms. Baker's filings.

However, Ms. Hodge does allege that APC and PASSE "required [her] to clock out once [she] had reached forty (40) hours in a week and refused to compensate [her] for any overtime hours worked." (*Id.*, ¶ 9). She claims that "this policy applied to all of their care coordinators" and that she knew this because two human resources representatives "told her this during orientation" and because her supervisors "told [her] this repeatedly throughout [her] employment." (*Id.*). Ms. Hodge maintains that other care coordinator supervisors and care coordinators were paid in the same manner by APC and PASSE and that these employees would be interested in joining this action (*Id.*, ¶¶10-11).

APC and PASSE contend that conditional certification of a class including care coordinator supervisors and care coordinators is inappropriate for multiple reasons, although they would agree to this Court conditionally certifying a class made up of only care coordinator supervisors (Dkt. No. 25, ¶ 3). First, APC and PASSE argue that Ms. Baker has failed to make a preliminary factual showing that care coordinator supervisors and care coordinators are similarly situated (*Id.*, ¶ 3). APC and PASSE assert that care coordinator supervisors and care coordinators have job duties that "vary significantly" (Dkt. No. 26, at 6). According to APC and PASSE, there is also an inherent conflict of interest among care coordinator supervisors and care coordinators because "[s]upervisors are responsible for the control of the significant aspects of the day-to-day functions of Care Coordinators, including *inter alia* hiring and firing, policy enforcement, timekeeping, reporting hours worked, approving overtime, and reporting overtime." (*Id.*, at 8-9). In response, Ms. Baker argues that the conflict of interest between the two groups is "negligible" because: (1) there is no evidence that care coordinator supervisors had a financial incentive to enforce the policy against care coordinators and (2) both groups had "essentially the same duties" and had the same policies enforced against them (Dkt. No. 27, at 9-10).

The Court finds that Ms. Baker has not carried her lenient burden of establishing at this stage of the litigation that she and other care coordinator supervisors are similarly situated to care coordinators employed by APC and PASSE since May 13, 2017.  Based on the record before the Court, care coordinator supervisors and care coordinators do not have "essentially the same duties" as Ms. Baker suggests (*Id.*, at 10).  While Ms. Baker provides minimal information regarding her duties as a care coordinator supervisor in her complaint, APC and PASSE have presented sworn affidavits from two care coordinator supervisors and the President of Care Coordination that shed more light on the job duties of these two groups (Dkt. Nos. 25-1; 25-2; 25-3).  The declarations of Kristen Allen and Tiffany Hefley do not dispute Ms. Baker's description of care coordinator supervisors' duties; they simply provide more detail about these duties (Dkt. Nos. 25-1; 25-2).

Ms. Allen and Ms. Hefley's declarations state that care coordinators have caseloads of "approximately 40-50 members," but care coordinator supervisors have no caseload of members (*Id.*, ¶ 5).  Further, Jessica Anderson, the President of Care Coordination for APC, states that care coordinators "are responsible for managing the care of APC's Medicaid clients" by creating individual care plans for clients and visiting clients' homes (Dkt. No. 25-3, ¶ 5).  In contrast, care coordinator supervisors are responsible for overseeing the work of and personnel matters related to care coordinators (*Id.*).  Based on Ms. Baker's affidavits in support of her motion, the Court finds that, at this stage of the litigation and based upon the record before the Court, there is insufficient evidence to show that care coordinator supervisors and care coordinators are similarly situated with respect to this motion for conditional certification.

Even if the Court found that care coordinator supervisors and care coordinators employed by APC and PASSE were similarly situated, this Court finds APC and PASSE's assertion that there is an inherent conflict of interest between care coordinator supervisors and care coordinators

7

to be persuasive.  To support this argument, APC and PASSE rely on *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309 (M.D. Ala. 2002).  In that case, the plaintiff wanted to certify conditionally a class consisting of both foremen and the crewmen who worked under the foremen at a utility maintenance company.  *Id.*, at 1311.  The Middle District of Alabama declined to certify the class because the foremen and crewmen had "an inherent conflict of interest" where the foremen were "potentially complicit in the allegedly unlawful practice of failing to report overtime" and where the foremen had "an economic incentive to under-report the hours of their crew." *Id.*, at 1314.

Ms. Baker argues that the facts in *White* are distinguishable from her case because the "supervisors had no financial incentive to dock care coordinators hours." (Dkt. No. 27, at 10).  However, Ms. Baker does admit that "[o]ne incentive was clearly job preservation," which is in itself a financial incentive (*Id.*).  Further, Ms. Baker admits in her affidavit that she is "responsible for enforcing" APC and PASSE's policy regarding hours worked and overtime pay "among the care coordinators." (Dkt. No. 11-6, ¶ 9).  Thus, Ms. Baker is "potentially complicit in the allegedly unlawful practice of" requiring care coordinators to clock out after reaching 40 hours in a week. *White*, 204 F. Supp. 2d at 1314.  Indeed, APC and PASSE allege that Ms. Baker "could be held liable for the purported overtime pay violation alleged by Plaintiff." (Dkt. No. 26, at 9).  Because of the inherent conflict of interest between care coordinator supervisors and care coordinators, the Court finds it inappropriate at this time to certify conditionally a class consisting of care coordinator supervisors and care coordinators.  Ms. Baker has not carried her burden on this request, given the statements in Ms. Baker's own affidavit on this point.

In contrast, however, the Court finds Ms. Baker has carried her lenient burden of establishing that she is similarly situated to other care coordinator supervisors employed by APC and PASSE in Arkansas since May 13, 2017.  Ms. Baker's affidavit demonstrates that APC and

PASSE only paid Ms. Baker "for hours that [she] worked up to forty (40) per week" but did not pay her "for any overtime hours worked." (Dkt. No. 11-6, ¶ 9).  Ms. Baker also asserts that she knows that these practices applied to other care coordinator supervisors because she and other care coordinator supervisors discussed their pay and schedules with each other (*Id.*, ¶¶8-9).  Further, APC and PASSE did not oppose the conditional certification of a class limited to care coordinator supervisors (Dkt. No. 25, ¶ 3).  Therefore, the Court conditionally certifies a class limited to care coordinator supervisors in this action for purposes of giving notice.

Further, the Court adds the qualifier, which it believes is appropriate based upon information provided by the parties, that the class is limited to care coordinator supervisors in Arkansas.  Ms. Baker is employed in Arkansas, and there is no discussion in the record of any care coordinator supervisors being employed by or working for defendants outside of Arkansas.  If either party disputes this, that party may file a motion with the Court for reconsideration of the Arkansas limitation.

### B. Notice

Ms. Baker has provided the Court with proposed written and electronic notice and consent forms (Dkt. Nos. 11-1; 11-2; 11-3; 11-4).  The Court has reviewed the proposed notice submitted by Ms. Baker and approves as to its form with the following changes:  all references to care coordinators in the Notice and Consent should be removed and "supervisors" should be referred to as "care coordinator supervisors."  Given the Court's ruling with respect to care coordinators, as opposed to care coordinator supervisors, the Court grants APC and PASSE's request that all references to care coordinators be removed from the Notice and Consent (Dkt. No. 26, at 11).

The Court denies APC and PASSE's request that the "INTRODUCTION" paragraph be the first paragraph and that the wording in the "TIME SENSITIVE" paragraph be moved to paragraph five (5).

Ms. Baker requests that the Court ratify the following notice process as it pertains to potential opt-in plaintiffs:  Ms. Baker would send notice to potential opt-in plaintiffs *via* U.S. Mail and email, with a reminder email sent 30 days after the date of mailing (Dkt. No. 11, ¶ 7).  She also requests that the Court grant a 90-day opt-in period beginning on the date on which APC and PASSE release the potential putative class members' contact information to plaintiff's counsel (*Id.*, ¶ 5).  Ms. Baker asks that this Court enter an order directing APC and PASSE to provide the names, last known addresses, email addresses, and last known cell phone numbers of the potential opt-in plaintiffs no later than seven days after the entry of the Order (*Id.*, ¶ 6).

APC and PASSE oppose any electronic means of notice, arguing that "[r]edundant transmissions of the same Court-approved Notice in the form of Notice and Consent forms sent both by U.S. Mail and email could be interpreted as an endorsement of the lawsuit, which is inappropriate." (Dkt. No. 26, at 10).  APC and PASSE also argue that allowing Ms. Baker to send electronic notice to potential opt-in plaintiffs is "burdensome" and that it "will only add additional time and expense to the issuing of any notices."  (*Id.*, at 11).  This Court has recently approved notice *via* email in several cases, including *Fox*, 2021 WL 1096332, at *5; *McChesney*, 2019 WL 118408, at *6; and *Hicks v. Lindsey Management Co., Inc.*, Case No. 3:18-cv-00133-KGB, 2019 WL 542973, at *4 (E.D. Ark. Feb. 11, 2019).  Notice *via* email furthers the goal of "ensur[ing] that potential plaintiffs receive notice in a timely and efficient manner." *Hussein v. Capital Bldg. Servs. Grp.*, 152 F. Supp. 3d 1182, 1198 (D. Minn. 2015).

The Court grants Ms. Baker's motion to the extent she seeks to provide potential opt-in plaintiffs with notice *via* U.S. Mail. Accordingly, Ms. Baker may send one written notice and consent form to the potential opt-in plaintiffs *via* U.S. Mail. Furthermore, the Court grants Ms. Baker's motion to the extent she seeks permission to send potential opt-in plaintiffs one email with the notice and consent form and one follow-up email 30 days after the date of mailing. To facilitate notice, APC and PASSE are ordered to provide Ms. Baker's counsel the names, last known addresses, and last known email addresses for the potential opt-in plaintiffs within 14 days of the date of this Order. The Court also directs APC and PASSE to provide such information to Ms. Baker's counsel *via* Excel formatting. After receiving such information, Ms. Baker shall then have 90 days to distribute notice and file opt-in consent forms with the Court.

### III. Conclusion

For the reasons discussed above, the Court grants in part and denies in part Ms. Baker's motion for conditional certification, for disclosure of contact information, and to send notices (Dkt. No. 11). The Court conditionally certifies the following class:

> All hourly care coordinator supervisors employed by APC and PASSE in Arkansas since May 13, 2017.

To facilitate notice, APC and Passe are ordered to provide to Ms. Baker's counsel the names, last known mailing addresses, and last known email addresses for every hourly-paid care coordinator supervisor who worked for APC and Passe in Arkansas any time after May 13, 2017, within 14 days of the date of this Order. Ms. Baker shall have 90 days from the date APC and Passe provide this information to distribute notice to the potential opt-in plaintiffs and to file copies of the consent forms with the Court. Ms. Baker may provide notice to the class of individuals consistent with the terms of this Order.

It is so ordered this 17th day of September, 2021.

_____
Kristine G. Baker
United States District Judge